IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF NEW MEXICO

| | |
|---|---|
| IN RE: SHALE OIL ANTITRUST LITIGATION<br><br>The Document Relates to:<br><br>All Actions | Case No. 1:24-md-03119-MLG-LF<br><br>Judge Matthew L. Garcia |

**KANSAS'S MOTION FOR LIMITED INTERVENTION
AND MEMORANDUM OF LAW IN SUPPORT**

Proposed Defendant-Intervenor State of Kansas, *ex rel.* Kris W. Kobach, Attorney General ("Kansas"), under Federal Rule of Civil Procedure 24 and D.N.M.LR-Civ 15.1, respectfully moves for limited intervention as to Plaintiffs City of San Diego, City of San Jose, County of San Mateo, Ford County, Kansas, and Mayor and City Council of Baltimore (collectively, the "Political Subdivisions") to defend Kansas's sovereignty and *parens patriae* and statutory authority.[1] (Doc. 86, ¶¶ 28-30, 37, 53.) Kansas's limited intervention is warranted as of right because (1) Kansas's motion is timely, (2) Kansas has the right to defend its sovereignty from usurpation, (3) the underlying suit attempts to foreclose Kansas's ability to

---

[1] Kansas's motion is purposefully limited to the Political Subdivisions. To the extent all or some of the Political Subdivisions' dismissed claims would result in an alleged class of individuals and businesses purporting to represent all governmental entities (it should not), Kansas would also argue individuals and businesses cannot usurp Kansas's sovereignty or the attorney general's authority. *See, e.g.*, 15 U.S.C. § 15c (attorney general's sole authority to bring federal antitrust claims for the State); K.S.A. 50-162 (attorney general's exclusive authority to bring Kansas Restraint of Trade Act claims for the State and its political subdivisions); K.S.A. 75-702 (attorney general's sole authority to prosecute civil matters for the State); *see also Thiebaut v. Colo. Springs Utils.*, 455 F. App'x 795, 800 (10th Cir. 2011) (recognizing "that in deciding whether a plaintiff qualifies for *parens patriae* standing, it is appropriate to look to state law" (citing *Hous. Auth. of the Kaw Tribe of Indians of Okla. v. City of Ponca City*, 952 F.2d 1183 (10th Cir. 1991)).

1

prosecute similar claims, and (4) no existing party can exercise Kansas's authority or protect its interests. *See* Fed. R. Civ. P. 24(a)(2).

Alternatively, the Court should permit Kansas to intervene. Kansas's motion is timely, Kansas's challenge to the Political Subdivisions' ability to sue involves a common question of law, and Kansas's intervention does not unduly delay or prejudice the existing parties at this early and preliminary stage of litigation. *See* Fed. R. Civ. P. 24(b)(1), (3). And the underlying suit relies on statutes that vest exclusive authority in Kansas via the attorney general, not political subdivisions. *See* Fed. R. Civ. P. 24(b)(2), (3).

Pursuant to D.N.M.LR-Civ 7.1(a), Kansas's counsel conferred with the existing parties' counsel to determine whether its motion for limited intervention was opposed. The following parties indicated opposition to Kansas's motion: Plaintiff Ford County, Kansas. The following parties indicated no opposition to Kansas's motion: Defendants Continental Resources, Inc.; Diamondback Energy, Inc.; Occidental Petroleum Corporation; Pioneer Natural Resources Company; Permian Resources Corp.; EOG Resources, Inc. At the time of this filing, the following parties have not indicated their position to Kansas's motion:[2] Plaintiffs Mayor and City Council of Baltimore, County of San Mateo, City of San Jose, and City of San Diego; and Defendants Chesapeake Energy Corporation, Hess Corporation, John B. Hess, and Scott D. Sheffield.

For the reasons discussed in its motion and in the accompanying supporting memorandum, Kansas respectfully requests this Court grant Kansas's motion for limited

---

[2] This statement is not intended to imply all of these parties have not engaged Kansas in conversation about its motion prior to this filing.

intervention in this matter. Pursuant to D.N.M.LR-Civ 15.1, Kansas attaches its proposed motion to dismiss and supporting memorandum as <u>Exhibit A</u>.

**MEMORANDUM OF LAW IN SUPPORT OF
<u>KANSAS'S MOTION FOR LIMITED INTERVENTION</u>**

Proposed Defendant-Intervenor Kansas respectfully submits this memorandum of law in support of its motion for limited intervention as to the Political Subdivisions' class allegations against eight oil and gas companies and two former corporate executives (collectively, the "Shale Oil Defendants"). (Doc. 86.) Federal Rule of Civil Procedure 24 allows Kansas to move for limited intervention as of right, or alternatively, by permission, to challenge the Political Subdivisions' lack of authority to bring its class allegations, challenge the suit's standing, jurisdiction and venue, and defend Kansas's sovereignty and constitutional, statutory, and common law authority, including its *parens patriae* authority.[3]

**<u>BACKGROUND</u>**

On August 24, 2024, Plaintiff Mayor and City Council of Baltimore ("Baltimore") filed a class action complaint against the Shale Oil Defendants for allegedly conspiring to inflate the price of crude oil. *See* Class Action Complaint, *Mayor and City Council of Baltimore v. Permian Resources Corp., et al.*, No. 1:24-cv-00842 (D.N.M. Aug. 24, 2024). Baltimore brought claims under the Sherman Act and various state antitrust laws, including the Kansas Restraint of Trade

---

[3] Because Kansas respects the sovereignty of other States, Kansas's intervention is narrowly focused on Kansas's interests and claims. However, the Political Subdivisions' class allegations may also threaten other States' sovereignty and constitutional, statutory, and common law authority.

Act. *Id*., at ¶¶ 112-83. Baltimore's class action complaint alleged a nationwide class of "All persons and entities" who purchased petroleum products. *Id*., at ¶¶ 102-03.

On October 3, 2024, Plaintiffs County of San Mateo ("San Mateo County") and City of San Jose ("San Jose") filed a class action complaint against the Shale Oil Defendants for an alleged conspiracy to artificially restrict the production of crude oil and fix the price of oil. *See* Class Action Complaint, *County of San Mateo, et al. v. Hess Corp., et al.*, No. 1:24-cv-01000-MLG-LF (D.N.M. Oct. 3, 2024). Like Baltimore, San Mateo County and San Jose brought class allegation claims under the Sherman Act and various state antitrust laws, including the Kansas Restraint of Trade Act. *Id*., at ¶¶ 131-208. San Mateo County's and San Jose's class complaint alleged a nationwide class of "All non-federal and non-state governmental entities" who purchased gasoline or diesel. *Id*., at ¶¶ 119-20.

On October 15, 2024, Plaintiff Ford County, Kansas ("Ford County") filed a class action complaint against the Shale Oil Defendants for constraining domestic oil production and fixing the price of gasoline. *See* Plaintiffs' Original Class Action Complaint, *Ford County, Kansas v. Permian Resources Corp., et al.*, No. 1:24-cv-01042-MLG-LF (D.N.M. Oct. 15, 2024). Ford County only brought a Kansas Restraint of Trade Act claim. *Id*., at ¶ 132-37. Ford County's class complaint alleged a class of "All counties and cities in the state of Kansas which purchased gasoline in Kansas[.]" *Id.*, at ¶¶ 121-22.

On November 1, 2024, Plaintiff City of San Diego ("San Diego") filed a complaint only on its own behalf against the Shale Oil Defendants for restricting the production of crude oil and fixing its costs. *See* Complaint, *The City of San Diego v. Hess Corp., et al.*, No. 1:24-cv-01222-MLG-LF (D.N.M. Nov. 1, 2024) (transferred from S.D. Cal., No. 3:24-cv-2061-AGS-DEB). San

4

Diego brought claims based on the Sherman Act, California Cartwright Act, and California Unfair Competition Law. *Id*., at ¶¶ 115-27. Importantly, San Diego did not make any class allegations.

On January 10, 2025, the Political Subdivisions filed their Consolidated Class Action Complaint with individual consumers and businesses against the Shale Oil Defendants. *See* (Doc. 86.) The Complaint brings claims based on the Sherman Act and various state antitrust laws, including the Kansas Restraint of Trade Act. (Doc. 86, ¶¶ 260-385.) The Political Subdivisions' alleged class consists of "All persons, governmental and non-governmental entity end purchasers of crude oil derivative fuel products in the United States[.]" (Doc. 86, ¶¶ 248-49.) The Political Subdivisions seek class certification, declaratory relief, an injunction, and money damages. (Doc. 86, ¶¶ A-E.) Ultimately, the Political Subdivisions seek to end the alleged harm, recover losses on behalf of themselves *and* the general public, all States, all State agencies, and all political subdivisions of the States. (Doc. 86, ¶¶ 16, 248-49.) But, the Political Subdivisions fundamentally lack the legal authority to assert Kansas's exclusive *parens patriae* authority, exercise its statutory authority, and attempt to represent Kansas and its political subdivisions and citizens.

Kansas's intervention as a party-defendant is imperative to defend its state sovereignty and *parens patriae* interests and challenge the Political Subdivisions' standing, this Court's jurisdiction and venue, and class certification. The Political Subdivisions—entities created by their respective States and possessing limited authority—fundamentally undermine Kansas's and *every* State's sovereignty with their suit. Kansas does not presently have enough credible information to assess the Political Subdivisions' underlying claims and determine whether a

(legitimate) suit brought by Kansas to prosecute Kansas's claims is needed. Notwithstanding, Kansas seeks intervention to protect its ability to make similar factual allegations and claims against the Shale Oil Defendants, if or when Kansas determines any such claims exist. The Political Subdivisions are attempting to commandeer Kansas's possible claims by usurping Kansas's authority. Given its strong, legally protectable interests in this matter, Kansas has a right—or *at least* should be permitted—to intervene and protect its exclusive, sovereign authority.

## **ARGUMENT**

Federal Rule of Civil Procedure 24 empowers a prospective party to intervene in litigation because of its stake in the outcome. Because of Kansas's significant interest in the outcome of this suit, intervention is warranted.

Rule 24(a) articulates a non-party's right to intervention, and Rule 24(b) provides the circumstances where the Court may permit a non-party's intervention. Intervention fosters judicial efficiency and protects non-parties from having their interests adversely impacted without their participation. *See, e.g.*, *Stallworth v. Monsanto Co.*, 558 F.2d 257, 265 (5th Cir. 1977); *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 840 (8th Cir. 2009). And courts often grant limited-purpose intervention. *See, e.g.*, *Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1104 (10th Cir. 2005) (permitting intervention to challenge jurisdiction); *Duplan v. Harper*, 188 F.3d 1195, 1203 (10th Cir. 1999) (same). Courts have previously recognized that a state has a right to intervene for the limited purpose of protecting its

6

sovereignty.[4] *See, e.g.*, *Wyandotte Nation v. City of Kansas City*, 200 F. Supp. 2d 1279, 1287-89 (D. Kan. 2002) (allowing Kansas to intervene for the purpose of filing a motion to dismiss); *Akiachak Native Cmty. v. U.S. Dep't of Interior*, 584 F. Supp. 2d 1, 6-7 (D.D.C. 2008) (holding Alaska was entitled to intervene as of right to defend its sovereignty).

Kansas has a right to intervene in this matter because it has an interest that could be impaired or impeded by this action, and the parties do not adequately represent its interests. *See* Fed. R. Civ. Pro. 24(a)(2); *Wyandotte Nation*, 200 F. Supp. 2d at 1287-89. Notwithstanding, Kansas also meets the standard for permissive intervention under Rule 24(b) because Kansas has a claim or defense in common with the underlying suit, *see* Fed. R. Civ. P. 24(b)(1)(B), and the attorney general is the only official authorized to bring a statewide suit, *see* Fed. R. Civ. P. 24(b)(2)(A).

## I.     Kansas's motion is timely.

As a precondition, Rule 24 requires that a motion to intervene be timely. *See* Fed. R. Civ. P. 24(a)(2), (b)(1)-(2). Timeliness is determined "in light of all of the circumstances." *Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*, 619 F.3d 1223, 1232 (10th Cir. 2010) (quoting *Sanguine, Ltd. v. U.S. Dep't of Interior*, 736 F.2d 1416, 1418 (10th Cir.1984)). The Tenth Circuit uses three factors to assess timeliness: "(1) the length of time since the movant knew of its interests in the case; (2) prejudice to the existing parties; and (3) prejudice to the movant." *Oklahoma*, 619 F.3d at 1232 (cleaned up). "Federal courts should allow intervention where no one would be hurt and greater justice could be attained." *Utah Ass'n of Cntys. v. Clinton*, 255

---

[4] In fact, the Western District of Missouri recently granted Kansas's limited intervention as of right in a similar action and posture—also brought by Ford County—to defend Kansas's sovereignty and *parens patriae* and statutory authority. *See* Text Order (Doc. 85), *Rodriguez, et al. v. Exxon Mobil Corp., et al.*, No. 4:24-cv-00803-SRB (W.D. Mo. Feb. 7, 2025) (Bough, J.).

F.3d 1246, 1250 (10th Cir. 2001) (cleaned up). Intervention in the early phases of litigation is generally considered timely. *See W. Energy All. v. Zinke*, 877 F.3d 1157, 1165-66 (10th Cir. 2017) (viewing early intervention favorably); *Utah Ass'n of Cntys.*, 255 F.3d at 1251 (noting that intervention is timely and early when "all that occurred prior to the motion to intervene were document discovery, discovery disputes, and motions by defendants seeking dismissal on jurisdictional grounds"); *Wyandotte Nation*, 200 F. Supp. 2d at 1287 (finding motion to intervene timely when the parties had not yet commenced discovery).

Kansas first learned of this matter on or about February 4, 2025,[5] and seeks to intervene in a timely manner after learning of its affected interests. Litigation in this matter has progressed very little: all that has occurred is the Shale Oil Defendants' motions seeking dismissal on jurisdictional grounds. In fact, Kansas's intervention is made before the Plaintiffs' deadline to file their responses to the Shale Oil Defendants' motions to dismiss. *See* (Doc. 82.) And, document discovery has not even started. *See* (Docs. 88; 82 at 2.) Kansas's effort to intervene in this matter is at an early and preliminary stage of litigation and will not prejudice any of the existing parties. But, Kansas would be significantly prejudiced if denied intervention because Kansas's sovereignty is threatened by the Political Subdivisions' class allegations. This motion is timely.

## II.     Kansas has a right to intervene under Rule 24(a)(2).

Kansas is entitled to intervene as of right under Rule 24(a)(2). That rule provides a non-party with a right to intervene if (1) its application is "timely"; (2) it "claims an interest relating to the property or transaction that is the subject of the action"; (3) as a practical matter, the action

---

[5] This is the same day Kansas filed its motion for limited intervention in *Rodriguez*. *See* n.3, *supra*.

may impair or impede the applicant's interest; and (4) existing parties cannot adequately represent that interest. Fed. R. Civ. P. 24(a)(2); *see also W. Energy All.*, 877 F.3d at 1164. The second (interest) and third (impairment) elements are best analyzed together because they are "closely related." *Everest Indem. Ins. Co. v. Jake's Fireworks, Inc.*, 335 F.R.D. 330, 333 (D. Kan. 2020); *see also Nat. Res. Def. Council, Inc. v. U.S. Nuclear Regul. Comm'n* (*NRDC*), 578 F.2d 1341, 1345 (10th Cir. 1978) ("[T]he question of impairment is not separate from the question of existence of an interest.").

The Tenth Circuit "has historically taken a 'liberal' approach to intervention and thus favors the granting of motions to intervene." *W. Energy All.*, 877 F.3d at 1164. This liberal approach is further relaxed in cases involving "significant public interests." *Kane Cnty. v. United States*, 928 F.3d 877, 890 (10th Cir. 2019) (internal quotes omitted). Because Kansas's motion is timely and Kansas meets Rule 24(a)(2)'s other requirements, Kansas is entitled to intervene as of right.

    **a. Kansas has a direct, substantial, and legally protectable interest adversely affected and impaired by this litigation.**

To intervene as a matter of right, Kansas must show that disposition of the action without its presence will impair its ability to protect its interests. *City of Stilwell v. Ozarks Rural Elec. Co-op. Corp.*, 79 F.3d 1038, 1042 (10th Cir. 1996) (citing *Kiamichi R.R. Co. v. Nat'l Mediation Bd.*, 986 F.2d 1341, 1345 (10th Cir. 1993)). Interest and impairment under "Rule 24(a)(2) are intertwined." *FDIC v. Jennings*, 816 F.2d 1488, 1492 (10th Cir. 1987). "[T]he party seeking to intervene bears a 'minimal' burden to show that it has an interest that could be adversely affected by the litigation." *Everest Indem. Ins. Co.*, 335 F.R.D. at 333 (citing *Kane Cnty.*, 928 F.3d at 891).

Kansas's interest in this litigation is "direct, substantial, and legally protectable." *Wyandotte Nation*, 200 F. Supp. at 1287 (quoting *Utah Ass'n of Cntys.*, 255 F.3d at 1251). Specifically, Kansas has a significant, legally protectable interest in defending its sovereign *parens patriae* and statutory authority from usurpation by the Political Subdivisions. Kansas's *parens patriae* authority and its ability to bring claims against the Shale Oil Defendants would be impaired and impeded—*if not entirely foreclosed*—by this underlying litigation.

Kansas's *parens patriae* authority is a legally protectable interest because the "doctrine of *parens patriae* refers to the right of a State to sue to prevent or repair harm to its quasi-sovereign interests." *New Mexico v. McAleenan*, 450 F. Supp. 3d 1130, 1182 (D.N.M. 2020) (cleaned up); *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 607 (1982). "[P]arens patriae is inherent in the supreme power of every State[.]" *Snapp*, 458 U.S. at 600. Although the Supreme Court has declined to provide "an exhaustive formal definition [or] a definitive list of qualifying interests[,]" it articulated two general categories. *Id*. at 607. "'Quasi-sovereign' interests have been shown [1] where a state has sought to protect the health and well-being of its residents in general or [2] where a state claims an interest in not being denied its status within the federal system." *Graham v. Thornburgh*, 207 F. Supp. 2d 1280, 1283 (D. Kan. 2002) (citing *Snapp*, 458 U.S. at 607).

Kansas is uniquely positioned to bring an action on behalf of all citizens of Kansas by virtue of its *parens patriae* interests. *See New Jersey v. New York*, 345 U.S. 369, 372 (1953) (quoting *Kentucky v. Indiana*, 281 U.S. 163, 173-74 (1930)). This is in stark contrast to the comparably narrow authority held by political subdivisions because political subdivisions do not possess *parens patriae* authority. *See Reynolds v. Sims*, 377 U.S. 533, 575 (1964) (recognizing

that political subdivisions "never were and never have been considered as sovereign entities" and instead are "subordinate governmental instrumentalities created by the State"); *New Mexico*, 450 F. Supp. 3d at 1188 n.15 (collecting cases); *Bd. of Cnty. Comm'rs of Cnty. of Boulder v. Rocky Mountain Christian Church*, 481 F. Supp. 2d 1181, 1185-86 (D. Colo. 2007) (finding state law did not provide "a blanket power to sue in any situation the county so deems"); *Roane Cnty. v. Jacobs Eng'g Grp., Inc.*, 429 F. Supp. 3d 494, 495 & n.1 (E.D. Tenn. 2019) (recognizing that case law confirming that municipalities do not have *parens patriae* authority is "nearly innumerable") (collecting cases); *Nash Cnty. Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484, 496 (4th Cir. 1981) ("[C]ommon sense dictates that when an alleged wrong affects governmental units on a state-wide basis, the state should seek redress on their behalf as well as on its own rather than parcelling out the actions among local agencies."); *Warren Cnty. v. North Carolina*, 528 F. Supp. 276, 283 (E.D.N.C. 1981) (recognizing that political subdivisions lacked *parens patriae* interests because their "powers are not sovereign but derivative, owing to their creation by the legislature").

Here, Kansas has a legally protectable interest in its sovereign *parens patriae* authority and an interest in ensuring the proper party (*i.e.,* the State of Kansas) is bringing an action on behalf of the State, its political subdivisions, and the general public. *See, e.g.*, 15 U.S.C. § 15c (attorney general's sole authority to bring federal antitrust claims for the State); K.S.A. 50-162 (attorney general's exclusive authority to bring Kansas Restraint of Trade Act claims for the State and its political subdivisions); K.S.A. 75-702 (attorney general's sole authority to prosecute civil matters for the State); *see also Thiebaut v. Colo. Springs Utils.*, 455 F. App'x 795, 800 (10th Cir. 2011) (recognizing "that in deciding whether a plaintiff qualifies for *parens patriae*

standing, it is appropriate to look to state law" (citing *Hous. Auth. of Kaw Tribe of Indians of Okla. v. City of Ponca City*, 952 F.2d 1183 (10th Cir. 1991)). Further, Kansas has a legally protectable sovereign interest in enforcing state and federal antitrust and consumer protection laws, if violations have occurred. *See New Mexico*, 450 F. Supp. 3d at 1182 (recognizing States may sue as *parens patriae* to enforce statutes).

Kansas also has property and economic interests in the subject matter of this litigation. The Tenth Circuit recognizes property and economic interests satisfy the interests requirements for intervention as of right. *See, e.g., Coal. of Ariz./N. M. Cntys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 842 (10th Cir. 1996) (collecting cases). Even the mere "threat of an economic injury from the outcome of litigation undoubtedly" satisfies the interest requirement in the Tenth Circuit. *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1115 (10th Cir. 2002). Through its sovereign authority, Kansas imposes and collects taxes on "all motor-vehicle fuels or special fuels which are used, sold or delivered in this state for any purpose whatsoever[,]" which includes the crude oil derivative products at the subject of litigation. K.S.A. 79-3408; *see also* K.S.A. 79-3425 (payment of fuel tax to State); K.S.A. 79-34,142 (distribution of vehicle fuel taxes to state highway fund); K.S.A. 79-3425c (State's contribution to special city and county highway fund). And, Kansas has a property and economic interest in the civil penalties that may result from this litigation. K.S.A. 50-160 (civil penalties to the State for violations of Kansas Restraint of Trade Act). Thus, Kansas has clearly demonstrated its stake in this litigation is sufficient to satisfy the interests requirements to warrant intervention as of right.

### b. Kansas's sovereign, economic, and property interests may be impaired by the disposition of this case.

To meet the impairment requirement, an intervenor has the "minimal" burden to show "that impairment of its substantial legal interest is possible if intervention is denied." *Utah Ass'n of Cntys.*, 255 F.3d 1246, 1253 (cleaned up). The Tenth Circuit has found intervention is appropriate when a judgment would impair the proposed intervenor's interests. *See, e.g., id.*, at 1254; *Coalition*, 100 F.3d at 844.

Kansas's interests in this litigation are precipitated by the significant possibility that the Political Subdivisions' statewide and nationwide class allegations may foreclose Kansas's ability to (legitimately) bring similar allegation against the Shale Oil Defendants *if* or *when* Kansas discovers unlawful conduct. In other words, Kansas's interests may be impaired by the disposition of the case by operation of *res judicata*, collateral estoppel, or *stare decisis*, especially because the Political Subdivisions' action is on behalf of all governmental entities. *Cf. Ute Indian Tribe of the Uintah & Ouray Rsrv. v. Utah*, 790 F.3d 1000, 1008 (10th Cir. 2015) (Gorsuch, J.) (recognizing that "counties are usually thought to be in privity with their states for preclusion purposes when the state has lost an earlier suit"); *Cnty. of Boyd v. US Ecology, Inc.*, 858 F. Supp. 960, 974 (D. Neb. 1994) (recognizing that "Nebraska and its constituent political bodies are entitled to one fair chance" to litigate their claims (internal quotation marks omitted)), *aff'd*, 48 F.3d 359, 361-62 (8th Cir. 1995). The Political Subdivisions' broad class allegations seek to illegitimately invoke and represent each State's *parens patriae* authority. If the Political Subdivisions prevail, Kansas (and every other State) faces a tremendously high risk of being foreclosed from bringing the same or similar allegations against the Shale Oil Defendants because, again, this action necessarily includes the States, their arms, and their political

subdivisions. And if nothing less, the *stare decisis* effect of this litigation will speak volumes on future (legitimate) actions brought by the States, which alone is enough. *See Coalition*, 100 F.3d at 844 ("[T]he *stare decisis* effect of the district court's judgment is sufficient impairment for intervention under Rule 24(a)(2)."). Thus, disposition of the Political Subdivisions' claims may (most likely *will*) impair Kansas's sovereign, economic, and property interests.

### c. The existing parties do not—and *cannot*—adequately represent Kansas's interests in this litigation

The current parties are not equipped, nor motivated, to represent Kansas's sovereign interests. *See Wyandotte Nation*, 200 F. Supp. 2d at 1288-89 (recognizing that private parties and a municipality could not represent the State's interests). And, Kansas's "burden to establish inadequate representation by existing parties is 'minimal.'" *Everest Indem. Ins. Co.*, 335 F.R.D. at 334 (citing *Barnes v. Sec. Life of Denver Ins. Co.*, 945 F.3d 1112, 1124 (10th Cir. 2019)). Indeed, "the *possibility* of divergent interest is enough to satisfy this element," and "the moving party need only show the potential for inadequate representation." *Id.* (citing *W. Energy All.*, 877 F.3d at 1168) (emphasis added).

Because Kansas seeks to intervene to challenge the Political Subdivisions' usurpation of Kansas's sovereignty and *parens patriae* and statutory authority, the existing parties cannot adequately represent Kansas's interests. The Political Subdivisions *cannot* exercise Kansas's *parens patriae* authority in this action. *See Snapp*, 458 U.S. at 607; *Reynolds*, 377 U.S. at 575 (cleaned up) (recognizing "[p]olitical subdivisions of States—counties, cities, whatever—never were and never have been considered as sovereign entities[,]" cannot invoke *parens patriae* authority, and can only exercise the "powers conferred upon them" by the State). The Political Subdivisions cannot represent Kansas's interests and prospective legal claims against the Shale

14

Oil Defendants because the Political Subdivisions cannot exercise any authority on behalf of Kansas, its political subdivisions, and its citizens. And, assuming plaintiffs prevail on the merits, Kansas will see an impact to its state highway fund and ability to recover civil penalties. *See* K.S.A. 79-34,142; K.S.A. 79-3425c; K.S.A. 50-160.

Separately, the Shale Oil Defendants may seek a similar outcome as Kansas (*i.e.*, dismissal), but they do not share the "unique," sovereign interests of Kansas in defending its *parens patriae* and statutory authority. *See Wyandotte Nation*, 200 F. Supp. 2d at 1288-89. And the Shale Oil Defendants will likely seek to dismiss the claims as a whole *with prejudice*. But, Kansas is seeking dismissal of the Political Subdivision's class allegations *without prejudice* because Kansas may choose to bring or participate in a legitimate statewide or nationwide action, if or when concrete facts show violations of Kansas or federal law.

Because the "State is no ordinary litigant," no existing party can adequately represent its interests, especially when a state is acting to protect its sovereign authority. *Snapp*, 458 U.S. at 612 (Brennan, J., concurring); *cf. United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968, 984 (2d Cir. 1984) ("[A] government asserting its status as *parens patriae* deserves special consideration when the issue is adequacy of representation."). Kansas's interests are not adequately represented by the existing parties.

*   *   *

Because Kansas has a significant and legally protectable interest not shared by the existing parties that may be impaired by the outcome of this suit, the Court should find that Kansas is entitled to intervene under Rule 24(a)(2).

### III. Alternatively, the Court should permit Kansas, through its attorney general, to intervene under Rule 24(b).

If this Court determines that Kansas is not entitled to intervene as of right, then it should allow Kansas, through its attorney general, to intervene under Rule 24(b). As previously noted, the motion is timely. And Kansas otherwise meets the necessary requirements for permissive intervention.

#### a. Kansas's intervention is warranted under Rules 24(b)(1)(B) and (b)(3).

Rules 24(b)(1)(B) and (b)(3) allow Kansas to timely intervene if (1) Kansas has a claim or defense that shares a common question of law or fact, and (2) intervention would not unduly delay or prejudice the right of the original parties. Kansas meets this standard.

*First*, Kansas has a claim or defense that shares a common question of law with the underlying suit. By the Political Subdivisions' own account, the parties share a common question of law with Kansas. *See* (Doc. 86, ¶ 253.) A common question of law is also whether the Political Subdivisions' are attempting to improperly usurp Kansas's *parens patriae* and statutory authority by bringing an action on behalf of all persons, States, and political subdivisions. (Doc. 86, ¶¶ 248-49.) The Shale Oil Defendants will also likely question whether the Political Subdivisions have the authority to bring this litigation. By bringing this action on behalf of Kansas, its political subdivisions, and its citizens, the Political Subdivisions *directly* challenge Kansas's sovereignty (without naming Kansas as a defendant). Kansas seeks to defend its sovereignty through this limited intervention and proposed motion to dismiss.

*Second*, Kansas's intervention would not unduly delay or prejudice the rights of the original parties because, as noted above, Kansas's intervention is timely and at a preliminary stage of litigation. If Kansas is unable to intervene, Kansas's sovereignty "inherent in [its]

16

supreme power" would be fatally prejudiced. *Snapp*, 458 U.S. at 607. Because of Kansas's significant interests in the underlying suit and the common legal question, this Court should allow Kansas's to intervene under Rules 24(b)(1)(B) and (b)(3).

    **b. Kansas's intervention is warranted under Rules 24(b)(2)(A) and (b)(3).**

Alternatively, the Court should allow Kansas to intervene under Rule 24(b)(2)(3), which permits timely intervention by a state governmental officer who administers a statute or regulation at issue without unduly delaying or prejudicing the existing parties. Fed. R. Civ. P. 24(b)(2)(A); *see also Wilson v. CFMOTO Powersports, Inc.*, No. CV 15-3192 (JRT/JJK), 2016 WL 912182, at *8 (D. Minn. Mar. 7, 2016) (permitting a state agency head's intervention three months after amended complaint, but before start of discovery, when state agency administered and enforced the statute at issue); *Smith v. Fed. Hous. Fin. Agency*, No. 4:12-CV-54, 2013 WL 12121334, at *1-2 (E.D. Tenn. Jan. 22, 2013) (allowing state official to intervene in a class action suit based on a statute that state law authorized only the official to administer and the suit was "based on a matter of significant concern" to the official). Courts liberally grant permissive intervention to government officials "when sought because an aspect of the public interest with which [the officer] is officially concerned is involved in the litigation." *Nuesse v. Camp*, 385 F.2d 694, 705-06 (D.C. Cir. 1967). Kansas is represented by its attorney general, the state official authorized to enforce the statutes at issue, and Kansas's motion is timely and will not cause undue delay or prejudice the existing parties.

As the chief law enforcement officer of Kansas, the attorney general is the exclusive authority to "appear for the state, and prosecute and defend any and all actions and proceedings" in all federal courts. K.S.A. 75-702(a). And, Kansas (through the attorney general) is the sole

17

authority to enforce antitrust and consumer protection claims on behalf of the State, its subdivisions, and its citizens. *See* 15 U.S.C. § 15c (attorney general's sole authority to bring federal antitrust claims for the State); K.S.A. 50-162 (attorney general's exclusive authority to bring Kansas Restraint of Trade Act claims for the State and its political subdivisions); K.S.A. 75-702 (attorney general's sole authority to prosecute civil matters for the State); *see also* K.S.A. 50-628 (attorney general's exclusive authority to enforce state consumer protection law "throughout the state"). Kansas (through its attorney general) meets all prerequisites for permissive intervention under Rule 24(b)(2)(A) and (b)(3).

*   *   *

If the Court does not allow Kansas to intervene as of right, then it should allow Kansas, through the attorney general, to intervene for the limited purpose of defending its sovereignty and *parens patriae* and statutory authority and preserve its ability to bring a similar suit against the Shale Oil Defendants.

## **CONCLUSION**

For the foregoing reasons, this Court should grant Kansas's motion for limited intervention.

**Dated:** April 8, 2025                    Respectfully submitted,

**KRIS W. KOBACH**
**Attorney General of Kansas**

*/s/ Nicholas Smith*
Melanie S. Jack, D.N.M. Bar No. 25-85
  *First Assistant Attorney General*
Nicholas C. Smith, D.N.M. Bar No. 25-77
  *Assistant Attorney General*
Adam T. Steinhilber, D.N.M. Bar No. 25-83
  *Assistant Solicitor General*
**OFFICE OF ATTORNEY GENERAL**
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
Phone: (785) 296-3751
Fax:    (785) 291-3699
Email: Melanie.Jack@ag.ks.gov
        Nicholas.Smith@ag.ks.gov
        Adam.Steinhilber@ag.ks.gov

*Attorneys for State of Kansas*

## CERTIFICATE OF SERVICE

    I hereby certify that on this 8th day of April, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who have entered an appearance, and I otherwise caused all parties to be served with the foregoing document as required by Federal Rule of Civil Procedure 24(c).

                                            */s/ Nicholas Smith*
                                            Nicholas C. Smith